UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN N. KISH,

    Plaintiff,

v.

EXELON GENERATION COMPANY,
LLC, EXELON CORPORATION,

    Defendants.

No. 06 C 3235
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff John N. Kish filed suit against Defendants Exelon Generation Company, LLC ("Generation") and Exelon Corporation (together, "Exelon") alleging that he was suspended and demoted as the result of discrimination based on age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"). Defendants now move for summary judgment; for the following reasons, Defendants' motion is granted.

**I.    FACTS**

Mr. Kish began working for Commonwealth Edison Co. ("ComEd") in 1992 at the Dresden Nuclear Power Station. ComEd subsequently merged with Exelon, and Mr. Kish fell under the employ of Generation. In August 2004, he became a supervisor working in the "Balance of Plant" Group in the Engineering Department of the Dresden power plant. In August 2005, Generation issued a "Nuclear Event Report" detailing the failure of supervisors to make sure that the engineers working under them were certified for the work they were performing. The Report was coded red, indicating that this was considered a serious violation. The Dresden plant was directed to take immediate corrective action.

In response, Mark Kanavos, the Director of Engineering at Dresden, interviewed all of the first line supervisors in the Engineering Department: Robert R. Beavers, Gregory L. Howard, Joseph M. Kotowski, Timothy L. Loch, and Mr. Kish. The interviews followed a standard form using a prepared list of questions. The form also informed the interviewees that dishonesty could result in discharge. The supervisors were each asked whether they were aware of the procedural requirement to verify the qualifications of the engineers prior to making work assignments. Messrs. Beavers, Howard, Kotowski, and Loch all stated that they were aware of the requirement, though they acknowledged having ignored it most of the time for various reasons. Mr. Kish, on the other hand, insisted through multiple interviews that he was unaware that the requirement existed. Following the interviews, each of the first line supervisors, with the exception of Mr. Kish, received written warnings. Mr. Kish was suspended and then demoted to an in-service inspection position as an engineer. Charlie Bowser was promoted to replace Mr. Kish as a first line supervisor in the "Balance of Plant" Group.0

Exelon asserted that Mr. Kish received a more severe punishment than the others as a result of his response during the interviews. Mr. Kanavos stated that he did not believe Mr. Kish could continue working as a supervisor. During one of the meetings, Mr. Kanavos presented Mr. Kish with a form that Mr. Kish had signed indicating that he had read the procedure which made supervisors responsible for verifying certifications prior to assigning work. In addition, Mr. Kanavos believed that Mr. Kish's answer was completely inconsistent with the knowledge of an engineer and supervisor with his years of experience. Thus, Mr. Kanavos strongly believed that Mr. Kish was being dishonest during the interviews. At bottom, Mr. Kanavos believed either that Mr. Kish was lying, or that he was incompetent.

In August 2005, Mr. Kish was forty-nine (49) years old. Among the other supervisors, Mr. Beavers was fifty-three (53), Mr. Howard was forty-five (45), Mr. Kotowski was fifty (50), and Mr. Loch was forty-nine (49). Mr. Bowser, who replaced Mr. Kish as supervisor, was thirty-two (32) years old.

## II. **STANDARDS**

### A. *Summary Judgment Standard*

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–33 (1986). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in the plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

### B. *ADEA Standard*

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (2000). To establish a claim under the ADEA, Mr. Kish must show that his age "actually motivated [Exelon]'s decision," i.e., he must demonstrate that his age "actually played a

role in [the employer's decisionmaking] process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (internal quotation marks omitted). Mr. Kish may prove his claim through one of two methods—through direct evidence or through the indirect burden-shifting method articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, Mr. Kish must establish a prima facie case of discrimination. If he is able to do so, the burden shifts to Defendants who must then articulate a legitimate, non-discriminatory reason for Mr. Kish's suspension and demotion. *See Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 472 (7th Cir. 2002). If Exelon meets this burden, Mr. Kish must "muster sufficient evidence to convince a rational jury that [Exelon's] justifications were pretextual." *Id.* at 472–73.

### III. DISCUSSION

#### A. Mr. Kish Cannot Proceed Under the Direct Method

Mr. Kish is unable to make a claim via the direct method. Direct evidence of age discrimination is "evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 659 n.1 (7th Cir. 2001). Plaintiff has made little attempt to provide such evidence, save for presenting a few statements which he claims demonstrate management's age-based hostility. A statement is considered direct evidence of discriminatory intent where the statement was made around the time of and in reference to the adverse employment action. *Olson v. Northern FS, Inc.*, 387 F.3d 632, 635 (7th Cir. 2004). However, I see no hint of age discrimination in any of the asserted remarks to which Plaintiff points. Plaintiff is attempting to stretch words into something they are not. Crucially, none of the remarks references Plaintiff's suspension and demotion. Since none

of the remarks Mr. Kish presented demonstrates "an admission by the decision-maker that his actions were based upon the prohibited animus," *id.* (*quoting Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003)), there is no direct evidence of age discrimination.

  B. *The Indirect Method*

    **1. Prima Facie Case**

  Having failed to make his case via the direct method, Plaintiff must rely upon the indirect method to establish that he was discriminated against because of his age. First, Mr. Kish must establish a prima facie case of discrimination. *See Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002). To set forth a prima facie case of age discrimination, a plaintiff must show that: (1) he was over forty years of age; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly-situated, substantially younger employees were treated more favorably. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771–72 (7th Cir. 2002).

  It is undisputed both that Plaintiff is over forty years old and that his suspension and demotion constitute an adverse employment action. Thus, Plaintiff clearly satisfies the first and third elements of the prima facie case.

  The second element, whether Mr. Kish was meeting Exelon's legitimate expectations, intersects with the discussion of pretext because there is overlap between Exelon's purported reason for suspending and demoting Mr. Kish and its asserted reason for why he failed to meet expectations. *Cf. Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1113 (7th Cir.1998) (noting overlap between factual inquiry relevant to "legitimate expectations" prong of the prima facie case and proof of pretext). Because of this overlap, I will consider this element as

having been satisfied for purposes of the prima facie test. It is also important to note that to the extent Defendants argue that Mr. Kish failed to meet his job expectations because he neglected to check certifications before assigning work to engineers, that argument must be carefully scrutinized. If Exelon considered this reason to be enough to suspend and demote a supervisor, then Mr. Kish would not have been the only one to suffer such adverse actions. The other supervisors were all guilty of the same infraction; therefore, failing to check certifications was not sufficient, in and of itself, to warrant suspension and demotion. Some additional factor would have to be involved. Thus, any failure by Mr. Kish to meet job expectations is centered on Mr. Kanavos' belief that Mr. Kish was lying. As this is the reason Exelon has provided for Mr. Kish's suspension and demotion, it must be analyzed in the context of pretext rather than under the second prong of the prima facie case. *See Goodwin v. Bd. of Trs. of the Univ. of Ill.*, 442 F.3d 611, 619 (7th Cir. 2006) (stating that otherwise, such an "argument assumes its conclusion").

With regard to the fourth element of the prima facie case, Plaintiff cannot show that a similarly-situated, substantially younger employee was treated more favorably than he. The fourth prong of the test is flexible, and in a case where an employee is removed from his position, a similarly situated employee is not necessarily required. In such a situation, this prong can also be satisfied with a showing that the employer hired a substantially younger employee to replace the plaintiff, *Olson*, 387 F.3d at 635–36, or simply that the employer sought someone else to perform the same work after the plaintiff was removed. *Pantoja v. Amer. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 846 (7th Cir. 2007).

The only other people Mr. Kish can point to as similarly situated are the other supervisors. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002) ("[A]

6

plaintiff must show that [he] is similarly situated with respect to performance, qualifications, and conduct . . . and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." (*quoting Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000)). However, while they may have been treated more favorably by not being suspended and demoted, they were not substantially younger. *See Hartley v. Wis. Bell*, 124 F.3d 887, 893 (7th Cir. 1997) (finding that a seven year age difference was a "presumptively insubstantial gap"). Still, the Seventh Circuit has been flexible with the fourth element of the prima facie case, and Plaintiff can establish that Exelon hired a substantially younger employee, Charlie Bowser, to fill the role he vacated, satisfying the element. *Cf. Olson v. Northern FS, Inc.*, 387 F.3d 632, 655–36 (7th Cir. 2004) (holding that the fourth prong can be established when the employer hires a substantially younger employee to replace the plaintiff). Therefore, I am willing to assume for purposes here that Mr. Kish is able to satisfy this prong.

### 2. Legitimate Non-Discriminatory Reason

With the prima facie case established, the burden then falls on Exelon to articulate a legitimate, non-discriminatory reason for suspending and demoting Mr. Kish. *See Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 472 (7th Cir. 2002). Exelon's proffered reason is that Mr. Kanavos believed Mr. Kish lied during the investigation, even after he had been put on notice that deception would result in adverse action. Defendants assert that Mr. Kish lied when he said that he was unaware that engineers had to be certified for the areas in which they worked. Mr. Kanavos believed, based on both Mr. Kish's experience with the company and the documents Mr. Kish had signed acknowledging that he had read the plant procedures, that Mr.

Kish could not have been unaware of his responsibility as a supervisor to check certifications. On its face, this belief that Mr. Kish lied during the investigation constitutes a legitimate, non-discriminatory reason for Mr. Kish's suspension and demotion, which satisfies Exelon's burden.

### 3. Pretext

Now the burden in the case shifts back to Plaintiff, who must show that Defendants' explanation for the suspension and demotion is a pretext for age discrimination. *Id.* To show pretext, Mr. Kish "bears the burden of demonstrating that [Exelon's] ostensible justification for its decision is unworthy of credence." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 888 (7th Cir. 2001). Mr. Kish "may make the requisite showing by providing 'evidence tending to prove that [Exelon's] proffered reasons are factually baseless, were not the actual motivation for the [suspension and demotion], or were insufficient to motivate the discharge.'" *Id.* at 888–89 (*quoting Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 395 (7th Cir. 1998)). However, if Exelon honestly believed its reason for suspending and demoting Mr. Kish, then he cannot meet his burden. *Id.* at 889. This is true even if Exelon's reason for the adverse actions was "foolish or trivial or even baseless." *Id.* Here, Plaintiff fails to carry his burden of establishing pretext.

Plaintiff offers no evidence that suggests that Defendants' explanation for Mr. Kish's suspension and demotion was a pretext for age discrimination. It should be emphasized that whether Mr. Kish was actually telling the truth or not when Mr. Kanavos interviewed him is beside the point. The important issue is whether Mr. Kanavos truly believed that Mr. Kish was lying and whether this belief was the actual reason for Mr. Kish's suspension and demotion. In the end, Mr. Kish is unable to offer anything to suggest that Mr. Kanavos did not believe that

8

Plaintiff was lying. Nor is he able to offer anything to suggest that this was not the actual reason for the adverse employment action.

Beyond some conclusory statements regarding pretext, Plaintiff suggests that Mr. Kish was the target of discriminatory statements due to his age. First, Plaintiff accuses Mr. Kanavos of directing the phrase "let's stump the dummy" at him during meetings. Mr. Kanavos challenges Plaintiff's assertion regarding the manner in which the phrase was used. Mr. Kanavos states that he was telling Mr. Kish that they were not at the meeting to play "let's stump the dummy." Even assuming Mr. Kish's interpretation of the story is true, I cannot find any hint of age-bias simply by calling someone a "dummy," disagreeable as it may be.

Second, Plaintiff accuses Mr. Kanavos of saying that because of his age, Mr. Kish needed a haircut, needed to shave, and was dressed like a bum. I do not interpret such a statement as derogatory of Mr. Kish's age. Rather, it suggests to me that Mr. Kanavos desired to see Mr. Kish's appearance become commensurate with his position in the workplace. Again, even if this was not a nice thing for Mr. Kanavos to say, it is not suggestive of an age bias.

Third, Plaintiff states that Mr. Pournia, a manager who reported to Mr. Kanavos, made age-biased remarks concerning the "old Exelon" and "old ComEd" employees and how "you've got to poke your finger in their eye and you've got to keep poking them in the chest to get them to do anything." However, understood in the proper context, where ComEd's parent company had just a few years earlier merged with Exelon Corp., the use of the word "old" is clearly an indication of tenure, not age. That is to say, it is meant to refer to individuals—like Mr. Kish—that worked for ComEd before the merger. Thus, I see no age bias in statements involving the phrase "let's stump the dummy," comments referring to Mr. Kish's disheveled

9

appearance, or remarks comparing new employees to old employees.

Even more fundamentally, the fact that the other supervisors were not suspended or demoted despite their failure to check certifications undermines Plaintiff's argument of pretext. In fact, contrary to Plaintiff's assertions, it reinforces Defendants' explanation for the adverse actions. After the root cause analysis, Plaintiff and the four other supervisors—all roughly the same age—were questioned about whether they were aware of the requirement that they verify their subordinates' qualifications prior to the time that work was assigned and performed. Four of the supervisors acknowledged that they were aware of the requirement and received mild discipline. Mr. Kish was the only one out of the five supervisors that denied being aware of the requirement. This denial, moreover, was made despite the fact that Mr. Kish had previously signed a form indicating that he was aware of the requirement. Mr. Kish's denials troubled his supervisors. Mr. Kanavos testified that he interpreted Plaintiff's response to mean one of two things: either Plaintiff was not being truthful, or he was an incompetent supervisor.

The import of all this is that while Mr. Kish undoubtedly received a harsher punishment than the other four, it is impossible to look at these facts and infer age discrimination. And as the Seventh Circuit pointed out in *Olson*, the *McDonnell Douglas* test is simply a tool to help courts answer the ultimate question: whether age was a motivating factor in the employer's decision. *See Olson*, 387 F.3d at 635. Mr. Kish's punishment was indeed more severe than the other supervisors, but the additional severity is eminently explainable by the fact that Mr. Kish is the only one who failed to acknowledge awareness of the requirements. That Mr. Kish was both the only one who gave a unique answer and the only one who received a harsher punishment destroys his claim that age bias was at work here. It also effectively eviscerates his claim of pretext.

In addition, it is immaterial whether Mr. Kish was, in fact, lying in his responses to the investigation into the root cause analysis. Defendants believed he was lying. It is also immaterial whether Defendants' reaction to his responses was prudent from a managerial perspective. The essential point, for purposes here, is that there is an entirely reasonable, non-discriminatory explanation for Defendants' decision.

Plaintiff's final suggestion regarding pretext is that Exelon groomed the younger Mr. Bowser to replace him when he turned 50 and Mr. Bowser was treated more favorably because of his age. I find there to be nothing to this argument. There is nothing to suggest that promoting Mr. Bowser motivated Defendants' decision to demote Mr. Kish. On the contrary, as discussed above, that decision was based on Mr. Kanavos' belief that Mr. Kish lied during the investigation. Furthermore, it is common, and beneficial, for a company to support the advancement of its employees. That Mr. Bowser was encouraged to take on new and challenging responsibilities is not indicative of a pretext. Further, for it to be significant that Mr. Bowser was treated more favorably than Mr. Kish, Mr. Bowser must be similarly situated, which he was not; the comparison is therefore inapposite. Without more, what happened with Mr. Bowser prior to his elevation to supervisor does not suggest that Exelon's explanation for Mr. Kish's suspension and demotion was a pretext for age discrimination. Thus, Plaintiff has failed to show that Exelon's reason for suspending and demoting Mr. Kish was a pretext for age discrimination.

## IV. CONCLUSION

The uniformity in age between Mr. Kish and his former peers is an indication of a lack of age discrimination. Mr. Kish and the other supervisors were all near fifty years old. They all committed the same infraction by not checking certifications for their workers; yet, Mr. Kish was the only one suspended and demoted. What distinguishes Mr. Kish from the other supervisors is

that Mr. Kish was the only one whom the company believed was lying during the interviews. From the start, this case failed to pass the smell test. For the reasons set forth above, Defendants' motion for summary judgment is granted.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: **March 31, 2008**